UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
NEIL RHODES, individually and as a shareholder of
ALARM SPECIALIST, INC., suing on behalf of
himself and all shareholders of ALARM SPECIALIST,
INC. similarly situated and in the right of ALARM
SPECIALIST, INC,

ECF

Case No. 08 CIV. 4283

Jury Trial Demanded

                                            Plaintiffs,       **COMPLAINT**

- against -

GARY DAVIS; ALARM SPECIALIST, INC.,

JUDGE ROBINSON

                                            Defendants.
-----------------------------------------------------------------X

Plaintiff, NEIL RHODES, individually and as a shareholder of ALARM SPECIALIST, INC., suing on behalf of himself and all shareholders of ALARM SPECIALIST, INC. similarly situated and in the right of ALARM SPECIALIST, INC. (hereinafter collectively referred to as the "Plaintiff"), by and through their attorneys, ANDREW GREENE & ASSOCIATES, INC., as and for their Complaint, respectfully allege as follows:

## NATURE OF THE ACTION AND JURISDICTION

1.   This is a civil action brought, *inter alia,* pursuant to sections 502(a)(3) and 515 and 1104 of the Employee Retirement Income Security Act, as amended (29 U.S.C. §§ 1132(a)(3), 1145, 1104)(hereinafter referred to as "ERISA"), by an employee pension plan beneficiary Plaintiff, seeking money damages for breach of a pension plan, breach of ERISA obligations, including fiduciary obligations, other equitable relief under ERISA to secure performance by an employer of specific statutory obligations and to enforce contractual and statutory obligations to refrain from termination of employee rights under a pension plan, to refrain from misuse and conversion of pension funds, to pay and/or submit the required monetary contributions and/or reports to the Plaintiffs. In addition, the Complaint, relying on many common facts, transactions and

circumstances, asserts claims for breach for fiduciary duty, derivative claims, and conversion against the Defendants arising from the conversion of some $2,100,000 in pension funds of Alarm Specialist, Inc., conversion of corporate funds of Alarm Specialist, Inc., exclusion of the President of Alarm Specialist from the company premises and company records, usurping the authority of the President of Alarm Specialist in order to engage in improper conduct concerning pensions, corporate funds, tax matters and other related improper conduct of said Defendant concerning Alarm Specialist, Inc. Finally, the Complaint seeks an accounting of all pension fund documents, pension funds and related corporate funds relating to the improper conduct of the Defendants and a preliminary injunction over all corporation funds.

 2. Jurisdiction of this Court is invoked under the following statutes:

  i. Section 502(e)(1) and (f) of ERISA (29 U.S.C. § 1132(e)(1) and (f));

  ii. 28 U.S.C. § 1331 (federal question); and

  iii. 28 U.S.C. § 1337 (civil actions arising under Act of Congress regulating commerce).

 3. Venue properly lies in this district under section 502(e)(2) of ERISA (29 U.S.C. § 1132(e)(2). Service of process may be made on defendants in any other district in which they maybe found, pursuant to section 502(e)(2) of ERISA (29 U.S.C. § 1132(e)(2)).

## PARTIES

 4. Plaintiff, Neil Rhodes, is an individual residing at 3 Quincy Lane, White Plains, New York. Plaintiff is a beneficiary under the Alarm Specialist Inc. (the "Corporation") Pension Plan. Plaintiff is also a fifty percent (50%) owner, a Director and the President of Alarm Specialist, Inc., but as set forth below, has been excluded from his rights to pension funds, company funds and management rights by Defendant, Gary Davis.

5. Defendant, Gary Davis ("Davis"), is an individual residing at 6 Northdale Road, White Plains, New York. Defendant Davis is also a fifty percent (50%) owner, a Director and the Vice President of Alarm Specialist, Inc., and a Trustee of the Alarm Specialist Inc. Defined Benefit Plan and the Alarm Specialist, Inc. Profit Sharing Plan (together, the "Pension Plan"). Upon information and belief, at all times material hereto, Defendant Davis has been an Officer of defendant Corporation and has purported to act in its interest. Upon information and belief, at all times material hereto, said Defendant is and has been vested with authority and control over the payment and reports to the Plaintiffs. Further, upon information and belief, said defendant executed on behalf of the Corporation and himself individually the Defined Pension Plan Agreement with and said defendant became obligated for the obligations thereunder. Further, at all times relevant herein, Defendant Davis, in his capacity as Trustee, has acted as the fiduciary over the Pension Plan. Based upon all of the foregoing facts, said Defendant is an employer within the meaning of sections 3(5) and 515 of ERISA(29 U.S.C. §§ 1002(5) and 1145) and has fiduciary obligations to the Pension Plan participants pursuant to 29 U.S.C. § 1002(21)(A), 29 U.S.C. 11104(a) and all applicable law by reason of his exercise of complete discretion and control over the Pension Plan, imprudent conduct and other facts alleged herein. Accordingly, Davis is being sued in his individual and official capacities.

6. Alarm Specialist, Inc. is a domestic corporation organized under the laws of the state of New York in 1980 (the "Corporation") and at all times relevant herein was and is a for-profit domestic corporation company doing business in the County of Westchester and State of New York as an employer within the meaning of sections 3(5) and 515 of ERISA (29 U.S.C. §§ 1002(5) and 1145).

7. Upon information and belief, Pension Associates, Inc. a/k/a/ Pension Associates,

Inc. ("Pension Associates") is a corporation organized under the laws of the State of Connecticut which operated in a as the Plan Administrator, but is not a party hereto.

## BACKGROUND INFORMATION

8. Neil Rhodes founded the Corporation in or about 1980 to provide security and alarm systems to customers in the state of New York based upon his prior experience in the industry.

9. In or about 1980, Neil Rhodes was elected by the Board of Directors to serve as the President of the Corporation.

10. No written resolution of the Corporation has ever been adopted by the Board of Directors of the Corporation removing Mr. Rhodes as President of the Corporation.

11. In or about 1980, Neil Rhodes was elected by the shareholders to serve as a Director of the Corporation.

12. No written resolution of the Corporation has ever been adopted by the Shareholders of the Corporation removing Mr. Rhodes as a Director of the Corporation.

13. Prior to 1980 Neil Rhodes was the sole owner of a business general known as Alarm Specialist Company. In or about 1980, Neil Rhodes brought Gary Davis into the Corporation and made Davis became a fifty percent (50%) Shareholder, Vice President and a Director of the Corporation.

14. No written resolution of the Corporation has ever been adopted by the Board of Directors of the Corporation removing Mr. Davis as Vice President of the Corporation or naming Mr. Davis as an officer with superior authority to Rhodes.

15. No written resolution of the Corporation has ever been adopted by the Shareholders of the Corporation removing Mr. Davis as a Director of the Corporation.

16. Over time, Gary Davis began to assume a greater role in the day to day operation of the

Corporation's business, while Mr. Rhodes focused on maintaining client relationships developed by Mr. Rhodes on behalf of the Corporation.

A. **Conversion of Pension Funds**

17. Upon information and belief, in or about 1993 the Corporation elected to adopt a Profit Sharing Plan and thereafter elected to adopt a Defined Benefit Plan, together being the Pension Plan referred to herein.

18. At all relevant times herein, Davis has served as a Trustee of the Pension Plan.

19. For many years, Davis failed to fund the pension plan as required. Ultimately, after continuous prodding from Mr. Rhodes the Pension Plan was funded.

20. Upon information and belief, thereafter the Pension was funded, in part, reflecting contributions made on behalf of both Mr. Davis and Mr. Rhodes.

21. In or about December of 2007, Pension Associates, the Corporation's designated Pension Plan administrator located in Stamford Connecticut, advised Rhodes and Davis that the Defined Benefit Plan "asset[s] are $644,772 based upon equal contribution for the two of you in the amount of $641,440". Accordingly, although the exact amount of contributions is unknown because Gary Davis has failed and refused to provide required information to assess the status of the pension plan, upon information and belief, the total contributions by the Corporation to the Pension Plan exceeds $640,000.

22. In July of 2007, Rhodes received a written statement from Pension Associates. From this written statement, dated July 19, 2007, and identified as "Alarm Specialists, Inc Defined Benefit Plan", Rhodes learned, for the first time, that the Corporation's pension monies were not being held in sub-accounts for Mr. Rhodes, but were being deposited solely into the account of Defendant Davis

23. Specifically, at page six (6) of the plan statement, under the column captioned "compensation", Davis shows compensation of $220,000, while Rhodes amount is shown as "0". At page seven (7) of the Plan statement Davis is shown as having a vested accrued benefit of $2,603.80 and a "present value of vested accrued benefit" of $265,129 while Rhodes is shown as having "0". Specifically, at page six (6) of the plan statement, under the column captioned. And worst of all, at page nine (9), Davis is shown to have a "lump sum at retirement" amount of $3,701.756, while Rhodes amount is shown as "0".

24. In or about July 31, 2007, Rhodes went to Pension Associates, met with Mr. Theodore Andersen and was informed that Defendant Davis had previously advised him that Rhodes "was not a plan participant", that Rhodes "did not wish to participate" and that Defendant Davis had "bought out" Rhodes.

25. Each of the foregoing statements made by Davis to Mr. Anderson was false and and Davis knew these statements to be false.

26. Worse, Mr. Andersen advised Rhodes that Davis had directed him to put all Pension Plan monies solely in Davis' name, without Rhodes knowledge or consent, either in Rhodes individual capacity or as the President of the Corporation.

27. In or about December of 2007, Pension Associates advised Rhodes and Davis that the Defined Benefit Plan "asset are $644,772 based upon equal contribution for the two of you in the amount of $641,440". Nevertheless, Davis converted the entirety of those funds to his own use and benefit.

28. Davis knew that Davis was improperly converting pension monies to be held for the

6

benefit of Rhodes and improperly terminating Rhodes pension rights.

29.  Upon information and belief, Davis has also moved or secreted pension monies at a Smith Barney account as well as other Corporation accounts. In particular, Neil Rhodes later learned from a Smith Barney statement dated August 31, 2007 that the total assets of the Profit Sharing Portion of the Plan was not less than $1,506,629.77, a considerable sum in addition to the Defined Benefit Plan. Accordingly, although the total assets of the Pension Plan is unknown, upon information and belief, the assets of same exceed $2,100,0000, comprising not less than $641,440 from the Defined Benefit Plan and over $1,500,000 from the Profit Sharing Plan.

**B.   Conversion of Other Corporation Funds**

30.  In or about July of 2007, Davis changed the linked payroll account of the Corporation to, upon information and belief, an HSBC branch. No approval from the President of the Corporation was obtained for these actions taken without a proper corporate resolution.

31.  Upon information and belief, Davis is converting, directing, receiving, depositing and withdrawing Corporation funds into and from Corporation to accounts unknown to Rhodes, the President and 50% shareholder of the corporation, and has done so without Rhodes knowledge or consent and without the requisite corporate resolution or Rhodes' signature on bank signature cards.

34.  Upon information and belief, Davis is converting and defalcating thousands in Corporation funds on a regular and ongoing basis and has taken monies from the Corporation without the proper consent of the President of the Corporation, Rhodes.

**C.   Other Misconduct**

35.  In addition, the Davis, has hired private guards to restrict Rhodes access to the business premises and intimidate Rhodes and his family. Davis has refused to provide tax returns and W-2's. Davis has also changed alarm codes and attempted to lock out Rhodes by changing computer

codes necessary to access Corporation computer, changing locks at the business location of the Corporation, changing access codes to the Corporation's business location. Davis also instructed employees to ignore the authority of the President of the Corporation and causes Rhodes to be subject to ridicule while attempting to uncover the improper conduct of Davis and usurpation of the President's proper authority over the Corporation. Davis has also terminated Rhodes Corporation credit cards and has improperly withheld Corporation funds for distributions salaries or otherwise from Rhodes.

36. In short, Davis has stolen money from Rhodes' and the Corporation's Pension proceeds and deprived Rhodes of the benefit of the business he founded some twenty eight years ago.

### AS AND FOR FIRST CLAIM FOR RELIEF
### (PLAINTIFFS' ERISA CLAIMS AGAINST DEFENDANT
### DAVIS -FIDUCIARY LIABILITY)

37. Plaintiff repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth herein.

38. Defendant Davis was a Trustee under the Pension Plan.

39. Defendant Davis exercised complete discretion and control over the Pension Plan to the exclusion of other Corporation representatives, including without limitation the selection of the plan, the establishment of the plan, decisions when or when not to fund the plan, investment decisions, transfer of pension plan funds, engaging in prohibited transactions, termination of parties from the plan, conversion of funds to his own personal use that were part of the plan and engaging in other prohibited transactions and conduct without the knowledge or permission of the President of the Corporation.

40. Davis exercised no standard of due care; provided no oversight, supervision nor response to notices of wrongdoing, namely his own personal conversion of Pension Plan funds.

41. Defendant Davis is a fiduciary of the Pension Plan pursuant to the requirements of

ERISA 29 U.S.C. § 1002(21)(A), 29 U.S.C. 11104(a) and all applicable law.

42. Defendant Davis imprudently failed to fund the Pension Plan, imprudently failed to properly invest the Pension Plan funds, imprudently failing to adhere to all tax law requirements by delaying the funding of the plan, imprudently and illegally converting Pension Plan funds to be held for other Corporation employees to his own personal use and benefit in an amount not less than $2,100,000 and engaging in a host of prohibited transactions transferring funds and terminating the rights of Plaintiff Rhodes in the Pension Plan.

43. Accordingly, defendant Davis is liable to Rhodes for the payment and/or submission of the required monetary contributions and/or reports and is liable for the additional amount of said statutory damages, together with reasonable attorneys' fees, interest on the unpaid and/or untimely paid principal, costs and disbursements incurred in this action, pursuant to section 502 of ERISA (29 U.S.C. § 1132).

### AS AND FOR SECOND CLAIM FOR RELIEF
### (PLAINTIFF'S CLAIM FOR ERISA DAMAGES
### AGAINST DEFENDANT DAVIS -
### EMPLOYER LIABILITY)

44. Plaintiff repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth herein.

45. Upon information and belief, defendant Davis is and has been purporting to act the interest of defendant Corporation. Upon information and belief, defendant Davis executed on behalf of defendant Corporation and individually, defendant Davis became personally bound to assume all obligations of defendant Corporation.

46. Furthermore, upon information and belief, defendant Davis as an Officer of defendant Corporation is and has been vested with authority and control over payments, and has

assumed and wrongfully taken all control over the Pension Plan of the Corporation.

47. As such, defendant Davis is an employer within the meaning of sections 3(5) and 515 of ERISA (29 U.S.C. §§ 1002(5) and 1145).

48. Section 515 of ERISA (29 U.S.C. § 1145) requires employers to pay required contributions in accordance with the terms and conditions of the Pension Plan.

49. Upon information and belief, at all times material hereto, defendant Davis failed to pay or timely pay and/or submit the required monetary contributions and/or reports to Plaintiff. Such failure to make payment or timely payment and/or submit reports constitutes a violation of section 515 of ERISA (29 U.S.C. § 1145).

50. Section 502 of ERISA (29 U.S.C. § 1132) provides that, upon a finding of an employer violation of section 515 of ERISA (29 U.S.C. § 1145), the Court shall award to a Plaintiff the unpaid contributions, plus statutory damages and interest on the unpaid and/or untimely paid principal both computed at the rate provided for under the Plaintiff's plan or, if none, as set forth in the United States Internal Revenue Code (26 U.S.C. § 6621), together with reasonable attorneys' fees and costs and disbursements incurred in the action.

51. Accordingly, defendant Davis is liable to Rhodes for the payment and/or submission of the required monetary contributions and/or reports and is liable for the additional amount of said statutory damages, together with reasonable attorneys' fees, interest on the unpaid and/or untimely paid principal, costs and disbursements incurred in this action, pursuant to section 502 of ERISA (29 U.S.C. § 1132).

### AS AND FOR A THIRD CLAIM FOR RELIEF
### (PLAINTIFF'S CLAIM FOR BREACH OF
### CONTRACT BY DEFENDANT DAVIS)

52. Plaintiff repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth herein.

53. As a result of work performed by Rhodes, there became due and owing to Rhodes from defendant Davis an amount to be determined at trial but in no event less than $1,050,000, representing one half of the minimum amount of Pension Plan funds of over $2,100,000 based upon statements in the possession of the Plaintiff, together with consequential damages arising therefrom.

54. The payment of these monies to a person other than Rhodes is a breach of the Pension Agreements.

55. Upon information and belief, Defendant Davis, is a signatory to the Pension Agreements and has assumed all obligations of Defendant Corporation.

56. Accordingly, defendant Davis is liable to Rhodes, an amount to be determined at trial but in no event less than $1,050,000, plus the amount found due and owing from an audit of defendant Corporation's books and records for the period January 1, 2001 to present, together with consequential damages.

### AS AND FOR A FOURTH CLAIM FOR RELIEF
### (PLAINTIFF'S CLAIM FOR BREACH OF ERISA OBLIGATIONS
### BY DEFENDANT CORPORATION)

57. Plaintiff repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth herein.

58. Section 515 of ERISA (29 U.S.C. § 1145) requires employers to pay fringe benefit

contributions in accordance with the terms and conditions of the applicable Pension Agreement.

59. Upon information and belief, at all times material hereto, defendant Corporation failed to pay or timely pay and/or submit the required monetary contributions and/or reports to Plaintiff. Such failure to make payment or timely payment and/or submit reports constitutes a violation of section 515 of ERISA (29 U.S.C. § 1145).

60. Section 502 of ERISA (29 U.S.C. § 1132) provides that, upon a finding of an employer violation of section 515 of ERISA (29 U.S.C. § 1145), the Court shall award to a Plaintiff the unpaid benefit contributions, plus statutory damages and interest on the unpaid and/or untimely paid principal both computed at the rate provided for under the Plaintiff's plan or, if none, as set forth in the United States Internal Revenue Code (26 U.S.C. § 6621), together with reasonable attorneys' fees and costs and disbursements incurred in the action.

61. Accordingly, defendant Corporation is liable to Plaintiff, a beneficiary under the Pension Plan, for the payment and/or submission of the required monetary contributions and/or reports to Plaintiff and is liable for the additional amount of said statutory damages, together with reasonable attorneys' fees, interest on the unpaid and/or untimely paid principal, costs and disbursements incurred in this action, pursuant to section 502 of ERISA (29 U.S.C. § 1132).

### AS AND FOR A FIFTH CLAIM FOR RELIEF
### (PLAINTIFF'S CLAIM FOR BREACH OF CONTRACT
### BY DEFENDANT CORPORATION)

62. Plaintiff repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth herein.

63. As a result of work performed by Rhodes, there became due and owing to Rhodes from defendant Corporation an amount to be determined at trial but in no event less than $1,050,000, representing one half of the minimum amount of Pension Plan funds of over $2,100,000 based upon statements in the possession of the Plaintiff, together with consequential damages arising

therefrom.

64. The payment of these monies to a person other than Rhodes is a breach of the Pension Agreements.

65. Accordingly, defendant Corporation is liable to Rhodes, an amount to be determined at trial but in no event less than $1,050,000, plus the amount found due and owing from an audit of defendant Corporation's books and records for the period January 1, 2001 to present.

### AS AND FOR A SIXTH CLAIM FOR RELIEF
### (PLAINTIFFS DEMAND FOR AN ORDER DIRECTING
### DEFENDANT CORPORATION AND DAVIS TO
### PERMIT AN AUDIT OF ITS BOOKS AND RECORDS)

66. Plaintiff repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth herein.

67. Pursuant to the terms and conditions of the Pension Agreements, defendant Corporation is required, *inter alia,* to file certain employer contribution reports, and is further required to permit and cooperate with plaintiffs and/or their designated representatives in the conduct of audits of defendant Corporation's books and records, including, but not limited to, all Pension Plan Account Statements or any related documents, payroll sheets, daily time records, cash disbursement journals, State tax forms WRS-2, WT4A and 4B(NY), WR 30 (NJ), Federal tax forms W2, W3, 940, 941, 1096, 1099, 1120s/1120S and 1040 Schedule C, New York State Employment Reports, Insurance Corporation Reports and supporting checks, ledgers, vouchers, 1099 forms, evidence of unemployment insurance contributions, payroll tax deductions, disability insurance premiums, certification of workers compensation coverage, and any other items concerning payroll(s), as well as the same records of any affiliate, subsidiary, alter ego, joint venture or other related Corporation of the Employer doing bargaining unit work, for the purpose of ascertaining the amount of contributions due Rhodes, from

13

defendants and verifying the accuracy of the employer contribution reports, if any, for the Corporation.

68. Accordingly, pursuant to the terms and conditions of the Agreements, plaintiffs demand an order directing defendant Corporation to permit and cooperate with plaintiffs and/or their designated representatives in the conduct of an audit of defendant Corporation's books and records for the period January 1, 2001 to present.

### AS AND FOR A SEVENTH CLAIM FOR RELIEF
### (PLAINTIFF'S CLAIM FOR INJUNCTIVE RELIEF PURSUANT
### TO ERISA AGAINST DEFENDANT CORPORATION AND DAVIS)

69. Plaintiff repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth herein.

70. Pursuant to the provisions of ERISA and the Agreements, defendant Corporation is required to timely pay and/or submit fringe benefit contributions and/or reports to Plaintiff and permit and cooperate in the conduct of audits of defendant Corporation's books and records for so long as defendant Corporation remains obligated to do so pursuant to the Agreements.

71. Upon information and belief, defendant Corporation has failed to timely pay and/or submit contributions to Plaintiff for the period January 1, 2001 through the present and is currently in breach of its statutory obligations under ERISA. Defendants prior conduct demonstrates a significant likelihood that it will continue to breach the aforementioned statutory provisions.

72. Plaintiff Rhodes has no adequate remedy at law to ensure that defendant Corporation will continue to adhere to its statutory obligations.

73. Plaintiff Rhodes will suffer immediate and irreparable injury unless defendant Corporation, its officers, agents, servants and employees are enjoined from failing, refusing or neglecting to pay and/or submit the required monetary contributions and/or reports to Plaintiff Rhodes for so long as defendant Corporation remains obligated to do so pursuant to ERISA.

14

74. Accordingly, Plaintiff requests that this Court issue an injunction permanently enjoining defendant Corporation, its officers, agents, servants, employees and all persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise from violating ERISA by failing, refusing or neglecting to pay and/or submit the required contributions and/or reports to Plaintiff for the term of the agreements.

### FOR A EIGHTH CLAIM FOR RELIEF
### (SHAREHOLDER'S DERIVATIVE ACTION)

75. Plaintiff repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth herein.

76. Plaintiff Rhodes is a 50% shareholder of the Corporation and was such shareholder at the time of the transactions and misconduct of which plaintiff complains

77. Plaintiff Rhodes brings this action in the right of and for the benefit of the Corporation

78. The individual defendants, continuously from at least January 1, 2005 to date have converted, diluted and dissipated the Corporation's assets, and have caused interfered with the Corporation's operations and business practices.

79. In so causing the Corporation to suffer the foregoing injuries, the individual defendants acted carelessly, recklessly, improvidently, and in bad faith, and willfully and knowingly exceeded the authority of the Corporation, and knew or should have known in the exercise of reasonable diligence that the said course of conduct was improper.

80. As a direct result of said unlawful course of conduct and as a result reasonably to be anticipate therfrom, the Corporation has been damaged in an undetermined amount, and has been compelled to expend sums in prosecution of this action to enforce its rights.

81. As a further direct result of said course of conduct in which the individual defendants

caused, and as a result reasonably to be anticipated therefrom, substantial damage will be caused to the Corporation's business.

82. Plaintiff has made no demand upon the Board of Directors of the Corporation to bring action for the wrongs herein complained of because such demand would be futile, but Plaintiff has made demand upon Defendant Davis to take appropriate action to correct the wrongs herein alleged without result.. The said director is the very individuals against whom complaint is made, and who is a defendant in this action, and to make a demand against him would be tantamount to asking him to sue himself. If any such action were brought by said director, it could not and would not be effectively prosecuted.

83. Plaintiff has no adequate remedy at law.

## FOR A NINTH CLAIM FOR RELIEF
## (BREACH OF FIDUCIARY DUTY)

84. Plaintiff repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth herein.

85. By virtue of the foregoing, Defendants Davis, a Director of the Corporation, was placed in a special fiduciary relationship of trust and confidence and have each breached their fiduciary duties to Plaintiffs, including without limitation the conversion of Pension Plan funds, Corporation funds and funds payable to Rhodes, the failure to make appropriate distributions to Rhodes and/or payment of salaries to Rhodes while Defendant Davis continues to improperly receive funds from the Corporation, upon information, and belief, on an ongoing and regular basis.

86. By virtue of the foregoing, Defendant Davis has acted intentionally, willfully, maliciously and, as a result, Plaintiff is entitled to punitive damages.

## FOR A TENTH CLAIM FOR RELIEF
### (CONVERSION)

87. Plaintiff repeats and realleges each and every allegation set forth hereinabove alleged, with the same force and effect as though here set forth at length.

88. By virtue of the foregoing, Defendants Davis wrongfully converted monies of the Corporation and/or Rhodes, including without limitation, Pension Plan funds, Corporation funds and funds payable to Rhodes, the failure to make appropriate distributions to Rhodes and/or payment of salaries to Rhodes while Defendant Davis continues to improperly receive funds from the Corporation, upon information, and belief, on an ongoing and regular basis.

89. By virtue of the foregoing, Defendants Davis has acted intentionally, willfully, maliciously and, as a result, Plaintiff is entitled to punitive damages.

## ELEVENTH CAUSE OF ACTION
### (ACCOUNTING)

90. Plaintiff repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth herein.

91. Plaintiff Rhodes individually, and as the lawful representative of the Corporation has been wrongfully denied complete access to the books and records of the Corporation.

92. These books and records are required for the Plaintiffs to manage their business and personal affairs, including without limitation management of the business, to assess pension fund obligations and to file accurate corporate and personal tax returns, and other required functions and activities.

93. As a result of the failure to turn over these records, the Plaintiffs herein will be immediately and irreparably harmed if these records are not provided.

94. Plaintiffs have no adequate remedy at law.

95. By virtue of the foregoing, Defendants Davis has improperly used, collected, transferred or converted and/or participated in the improper use, collection, transfer or conversion of monies which are owed to the Plaintiffs and/or monies to be held for the benefit of Plaintiffs, and should be compelled to account for all monies collected and paid by or to the Corporation from January 1, 2001 to present and to turn over all books and records, including all tax, pension, bank account and financial records of the Corporation concerning same to the Plaintiffs immediately.

### AS AND FOR A TWELFTH CLAIM FOR RELIEF
### (PRELIMINARY INJUNCTION)

96. Plaintiff repeats and reallege each and every allegation contained in the paragraphs above as if fully set forth herein.

97. Plaintiff will be immediately and irreparably harmed if the Defendants herein are permitted to take further fraudulent means to convert assets for their own personal use, retain documents and records they are not entitled to, or otherwise take steps to harm the Plaintiffs. There is a strong likelihood that the Plaintiffs will succeed on the merits and the balance of equities favor the Plaintiff.

98. The Defendants should be enjoined from selling, assigning, hypothecating, encumbering, transferring and/or disposing any of the assets of the Corporation or otherwise transferring the property of the Corporation.

99. The Defendants should also be enjoined from taking or disposing of any records of any kind concerning the Corporation or Rhodes

100. Money damages are not adequate to provide an appropriate remedy to the Plaintiffs.

**WHEREFORE**, PLAINTIFF demands judgment:

1. Against all Defendants, jointly and severally, under ERISA for payment of all past due contributions in the amount to be determined at trial but in no event less than $2,100,000, together with all contributions which become due during the pendency of this action, together with consequential damages;

2. Against all Defendants, jointly and severally, for accrued prejudgment interest on all contributions in accordance with ERISA § 502(g)(2);

3. Against all Defendants, jointly and severally, for statutory damages on all contributions now due, reasonable attorneys' fees and costs and disbursements in accordance with ERISA 502(g)(2).

4. For an Order pursuant to Plaintiffs ERISA claims requiring all Defendant jointly and severally, to permit and cooperate in the conduct of an audit of the books and records of the Corporation for the period January 1, 2001 to the present, by Plaintiff Rhodes and against Defendants, jointly and severally, for the cost of said audit.

5. For an Order pursuant to Plaintiffs ERISA claims permanently enjoining defendants, their officers, agents, servants, employees and all persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise for so long as they remain obligated to contribute to Plaintiff, from failing, refusing or neglecting to pay and/or submit the required monetary contributions and/or reports in accordance with the applicable agreements and ERISA;

6. On the Eighth Cause of Action, against Defendants in an amount to be determined at trial but in no event less than $2,100,0000 together with punitive damages in the amount of $2,100,0000.

7. On the Ninth Cause of Action, against Defendant Davis in an amount to be determined at trial but in no event less than $2,100,0000 together with punitive damages in the amount of $2,100,0000.

8. On the Tenth Cause of Action, against Defendants in an amount to be determined at trial but in no event less than $2,100,0000 together with punitive damages in the amount of $2,100,0000.

9. On the Eleventh Cause of Action, for an Order compelling all Defendants to account for all monies collected and paid by or to the Corporation from January 1, 2001 to present and to turn over all books and records, including all tax, pension, bank account and financial records of the Corporation, including without limitations records concerning the Corporation, Davis and/or Rhodes.

10. On the Twelfth Cause of Action, enjoining the Defendants from selling, assigning, hypothecating, encumbering, transferring and/or disposing any of the assets of the Corporation or otherwise transferring the property of the Corporation, or from taking or disposing of any records of any kind concerning the Corporation or Rhodes

11. For such other and further relief as the Court deems just and proper;

Dated: New York, New York
       May 5, 2008

Yours, etc.

ANDREW GREENE & ASSOCIATES, P.C.

By: _____
    Thomas C. Landrigan (TL 3116)
    Counsel for the Plaintiff
    202 Mamaroneck Avenue
    White Plains, New York 10601
    (914) 948-4800

Rhodes/Complaint3